UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| AMERICAN GRAPHICS INSTITUTE, LLC, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 22-cv-11404-ADB |
| NOBLE DESKTOP NYC, LLC, | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM AND ORDER**

BURROUGHS, D.J.

American Graphics Institute, LLC ("AGI") brings this action against Noble Desktop NYC, LLC ("Noble") alleging copyright and trademark infringement as well as unfair competition under Massachusetts common law and Mass. Gen. Laws ch. 93A. See [ECF No. 13 ("Am. Compl.")]. Currently before the Court is Noble's motion to dismiss and compel arbitration. [ECF No. 19]. For the reasons set forth below, Noble's motion, [ECF No. 19], is GRANTED in part and DENIED in part.

I.      **BACKGROUND**

   A.   **Factual Background**

The Court draws the following facts from the complaint and the affidavits and documents submitted in support of the motion to dismiss and compel arbitration, see Cullinane v. Uber Techs., Inc., 893 F.3d 53, 55 (1st Cir. 2018) (citation omitted), "construe[s] the record in the light most favorable to the non-moving party[,] and draw[s] all reasonable inferences in its favor," Air-Con, Inc. v. Daikin Applied Latin Am., LLC, 21 F.4th 168, 175 (1st Cir. 2021).

1.    The Parties

AGI is a Massachusetts limited liability company ("LLC") that provides "professional development and technical training to companies, organizations, and employees on topics relating to graphics, design, and marketing."  [Am. Compl. ¶¶ 1, 12].  AGI hosts training sessions in suburban Boston and Philadelphia, in its own facilities, and across the country, in third-party facilities.  [Id. ¶ 17].  Since at least 2002, AGI has also hosted live online classes. [Id.].  AGI's website, www.agitraining.com ("AGI Website"), "includes titles and descriptions for courses offered and sold by AGI" including classes on programs like Photoshop and InDesign, and classes on web design.  [Id. ¶ 18].  AGI registered copyrights for its website on November 3, 2004, December 10, 2004, and February 4, 2022.  [Id. ¶ 19].

AGI incorporated as a Massachusetts LLC in 2009, but a company operating under the trade names "American Graphics Institute" and "AGI," has been in existence since 1995.  [Am. Compl. ¶¶ 20–21].[1]  Since at least 1999, the company has "sold, and offered for sale, professional development training to companies, organizations, and individuals on topics relating to graphics, design, and marketing" using the trade name "American Graphics Institute" or "AGI."  [Id.].  The company has used the marks "AMERICAN GRAPHICS INSTITUTE" and "AGI," continuously since October 1999.  [Id. ¶ 24].

The company has also used the following stylized mark ("AGI Stylized Mark"), continuously since at least 2013.  [Am. Compl. ¶ 26].

---

[1] Although the nature of the relationship between these various entities is not entirely clear from the Amended Complaint, the Court infers that they are related and the specifics of the relationship do not matter for purposes of this Order.



AGI's trade names and AGI marks "have become distinctly connected with AGI and its professional development training goods and services."  [Am. Compl. ¶ 28].

Noble is a New York LLC.  [Am. Compl. ¶ 13].  Noble operates a "professional development training business" that is "substantially similar" to AGI, in the state of New York. [Id. ¶ 33].  Like the AGI Website, Noble's website, www.nobledesktop.com ("Noble Website"), "lists course names and descriptions for professional development training classes," though unlike those listed on AGI's website, these classes are offered both by Noble and third parties, including AGI.  [Id.].

2.      The April/May 2020 Agreements and the Arbitration Provision

*Independent Contractor Agreement.*  As outlined in the Complaint, on May 1, 2020, Noble entered into an Independent Contractor Agreement ("ICA") with AGI, in which Noble agreed to perform "some or all" of a number of services for AGI, including "assist[ing] with and consult[ing] on the roll-out of new website features and designs to optimize conversions" and "[a]ssist[ing] with digital ad placement and optimization of online advertising."  [ECF No. 13-17 ("ICA"), Ex. A]; see also [Am. Compl. ¶ 44].  This contract does not have an arbitration provision.

*AGI License and Purchase Agreements and the Arbitration Provision.*  Although not referenced in the Complaint, AGI and Noble executed several other agreements at the same time. First, as relevant here, the parties and their owners executed an agreement through which Noble purchased AGI's New York business and Noble's owner acquired an interest in AGI's remaining

business ("Purchase Agreement").  Second, the parties executed an agreement through which

Noble licensed certain AGI materials ("AGI License Agreement").  See [ECF Nos. 22-3, 22-4;

ECF No. 23 at 4-5; ECF No. 24-10 at 2].

As to the specific scope of the AGI License Agreement, it provides:

> [S]ubject to the terms and conditions set out in this Agreement, [AGI] hereby grants
> to [Noble] a limited, non-exclusive and non-transferable right by way of license to
> make, reproduce and use the **Licensed Materials** solely for preparation by the
> Licensee of **Course Materials** for use solely in the Territory during the Term and
> for the purposes set forth in **Section 4.1** below.

[ECF No. 22-3 ¶ 2.1].[2]

---

[2] **Licensed Materials** are defined as "the **Works** described in **Schedule I** of th[e] Agreement."
[ECF No. 22-3 at 2].  **Works** are defined as

> all materials used to create the course, including, but not limited to, all text, editorial
> content, images, graphics, logos, illustrations, photographs, video, audio, and other
> materials, as well as the designs, icons, layout, "look and feel," and all other
> graphical elements of the course and all copyrights, trademarks, service marks,
> tradenames, patents and other intellectual property rights in any of the foregoing.

[Id.]  In turn, **Schedule I** defines "Licensed Materials" as "Design Curriculum Materials" and
explains that this "means any course [AGI] is offering as a group class, private tutoring, or
corporate training now or in the future."  [Id. at 8].

**Course Materials** are defined as the "compilation of photocopied extracts of Licensed
Materials, designed in advance to be used in support of a Course of Study."  [ECF No. 22-3 at 1].

Finally, **Section 4.1** states that Noble may only "make, reproduce or use the Licensed Materials
for preparation of Course Materials" for "instruction by [Noble's] instructors in relation to any
Course of Study provided by [Noble] to [Noble's] students in [New York]" or "distribution to
[Noble's] students for teaching, learning, discussion or classroom use in relation to any Course
of Study provided by [Noble] in [New York]."  [ECF No. 22-3 at 3].  It adds that "[Noble] may
allow its instructors and students to retain the Course Materials for subsequent reference."  [Id.].

The AGI License Agreement incorporates certain provisions of the Purchase Agreement. [ECF No. 22-3 ¶ 11.1].[3]  As relevant here, one of the incorporated provisions, Section 6.3(a) (the "Arbitration Provision"), provides:

> Each of the parties hereto agrees that it will attempt to settle **any dispute, claim or controversy arising under, out of, in connection with or relating in any way to this Agreement** . . . through non-binding mediation administered by an established, neutral mediation service with experience in joint venture disputes.  **Any such dispute, claim or controversy that cannot be resolved by the parties through non-binding mediation** within 60 days of notification to all the parties of the commencement of the dispute resolution procedures of this Section **will then be resolved solely and exclusively by binding arbitration conducted in accordance with the then effective Commercial Arbitration Rules of the American Arbitration Association** by a sole arbitrator with experience in joint venture disputes and the provisions of this Section. . . .

[ECF No. 22-4 ¶ 6.3 (emphasis added)].[4]

The parties agree that Noble terminated the AGI License Agreement on April 26, 2021. [ECF No. 20 at 9; ECF No. 23 at 4].

### 3.   Noble's Conduct following the April/May 2020 Agreements

AGI alleges that through its consulting services to AGI, Noble "learn[ed] [about AGI's] internal sales, marketing, promotional tactics, technical processes, and strategies," and gained "access to AGI's copyrighted works and branding efforts."  [Am. Compl. ¶ 9].  Noble then "expanded into a competing business" and used "AGI's well-known trademarks, copyrighted

---

[3] Section 11.1 of the ICA states: "The terms and provisions of Sections 6.3, 6.4, 6.5, 6.6, 6.7, 6.8, 6.9, 6.10, 6.11, 6.13, 6.14 and 6.15 of the Purchase Agreement are incorporated in this Agreement by reference."  [ECF No. 22-3 ¶ 11.1].  The Purchase Agreement, in turn, is defined as "that certain Purchase Agreement, dated as of April 30, 2020, by and among the Licensor [AGI], the Licensee [Noble], Kattan and the Smiths."  [Id. at 2].

[4] Section 6.3 carves out several sections of the Purchase Agreement to which the Arbitration Provision does not apply (Section 4.4: Non-Compete of Sellers; Section 4.5: Non-Solicitation; Section 4.6: Reasonableness of Restrictions; Section 4.7: Confidentiality).  [ECF No. 22-4 ¶ 6.3]. Neither party contends these exceptions are relevant here.

works, and goodwill to attract customers to its competing business."  [Id.].  AGI specifically alleges that "[f]rom April 27, 2021 until at least February 2022," Noble "copied the AGI Website," which was protected by each of its registered copyrights, "without AGI's authorization, consent, or knowledge, and without any remuneration to AGI."  [Id. ¶¶ 47, 49, 52]. The Noble Website also repeatedly uses AGI's marks, "AMERICAN GRAPHICS INSTITUTE," "AGI," and the AGI Stylized Mark.  [Id. ¶ 35].

        4.    <u>The 2021 Arbitration</u>

On April 29, 2021, Noble commenced an arbitration against AGI, raising various claims related to AGI's alleged breaches of several of the parties' contracts, including the AGI License Agreement.  [ECF No. 20 at 7]; <u>see also</u> <u>Noble NYC, LLC, et al. v. Am. Graphics Inst., LLC, et al.</u>, No. 01-21-0003-6637 (AAA 2021) ("2021 Arbitration").  In the 2021 Arbitration, AGI asserted several counterclaims, including that Noble breached the AGI License Agreement.

**B.**    **Procedural Background**

After filing an original complaint on August 31, 2022, AGI filed an amended complaint on October 6, 2022, alleging copyright infringement (Count I), [Am. Compl. ¶¶ 64–73], false designation of origin, in violation of the Lanham Act (Count II), [<u>id.</u> ¶¶ 74–80], infringement of common law trademarks and trade name infringement (Counts III and IV), [<u>id.</u> ¶¶ 81–89], unfair competition under state common law (Count V), [<u>id.</u> ¶¶ 90–95], and unfair or deceptive acts, in violation of Mass. Gen. Laws ch. 93A (Count VI), [<u>id.</u> ¶¶ 96–102].  Noble filed the instant motion to dismiss and to compel arbitration on November 4, 2022.  [ECF No. 19].  AGI opposed the motion on December 5, 2022.  [Id.].  The parties subsequently filed several additional rounds of briefing.  <u>See</u> [ECF Nos. 25, 29, 32, 41, 42].

## II.        LEGAL STANDARD

This Court's review of Noble's motion is governed by the Federal Arbitration Act

("FAA"), 9 U.S.C. §§ 1–16.  See 9 U.S.C. § 4.  "[T]he FAA requires courts to treat arbitration as

'a matter of contract' and enforce agreements to arbitrate 'according to their terms.'"  Air-Con,

21 F.4th at 174 (quoting Henry Schein, Inc. v. Archer & White Sales, Inc., 139 S. Ct. 524, 529

(2019)); and then citing 9 U.S.C. § 4).  The FAA does not compel "a party . . . to submit to

arbitration any dispute which [it] has not agreed so to submit[,]" McCarthy v. Azure, 22 F.3d

351, 354 (1st Cir. 1994) (citations omitted), but "a court must hold a party to its arbitration

contract just as the court would to any other kind" of contract, Morgan v. Sundance, Inc., 142 S.

Ct. 1708, 1713 (2022).

> Thus, a party that attempts to compel arbitration "must show [1] that a valid
> agreement to arbitrate exists, [2] that the movant is entitled to invoke the arbitration
> clause, [3] that the other party is bound by that clause, and [4] that the claim asserted
> comes within the clause's scope."

Hogan v. SPAR Grp., Inc., 914 F.3d 34, 38 (1st Cir. 2019) (quoting Ouadani v. TF Final Mile

LLC, 876 F.3d 31, 36 (1st Cir. 2017)).

In "evaluat[ing] motions to compel arbitration under the FAA[,]" "district courts . . .

apply the summary judgment standard." Air-Con, 21 F.4th at 175.  Under this standard, "[i]f the

non-moving party puts forward materials that create a genuine issue of fact about a dispute's

arbitrability, the district court 'shall proceed summarily' to trial to resolve that question." Id.

(citing 9 U.S.C. § 4; Neb. Mach. Co., Inc. v. Cargotec Sols., LLC, 762 F.3d 737, 744 (8th Cir.

2014)).  In conducting this review, the Court "construe[s] the record in the light most favorable

to the non-moving party and draw[s] all reasonable inferences in its favor." Id. (citations

omitted).

## III.     DISCUSSION

Noble asserts that each of the requirements to compel arbitration are met: (1) a valid arbitration agreement exists (2) Noble is entitled to invoke the arbitration clause, (3) AGI is bound by that clause, and (4) AGI's asserted claims come within the clause's scope.  [ECF No. 20 at 18–24].  Further, Noble argues AGI's claims are subject to arbitration because the "underlying facts (which are necessary elements of the claims) have already been arbitrated and decided between the exact same parties, as to the exact same 'course descriptions' (copyright) and 'logos' (trademark) on the exact same website . . . for the exact same period . . . ."  [Id. at 5].

AGI responds that its "claims in this litigation are distinct from the terms in the AGI License Agreement due to; i) timing; ii) location; iii) content; and iv) manner of use [and] the AGI License has no relationship to any claims or defenses," and therefore do not fall within the scope of the Arbitration Provision.  [ECF No. 23 at 16].  AGI also argues that Desktop Noble's "mere assertions that the dispute about the Defendants' infringement of the AGI Website Copyrights is covered by the" Arbitration Provision are insufficient to trigger arbitration even as to the threshold issue of whether an arbitrator, not the Court, should decide the issue of arbitrability.  [Id. at 2].  AGI also responds that the 2021 Arbitration has no bearing on this litigation, because AGI does not raise the same factual allegations or any of the same claims. [Id. at 16–19].

"When a dispute arises, the parties sometimes may disagree not only about the merits of the dispute but also about the threshold arbitrability question—that is, whether their arbitration agreement applies to the particular dispute."  Henry Schein, 139 S. Ct. at 527.  In such a case,

> [w]hen the parties' contract delegates the arbitrability question to an arbitrator, a court may not override the contract.  In those circumstances, a court possesses no power to decide the arbitrability issue.  That is true even if the court thinks that the

argument that the arbitration agreement applies to a particular dispute is wholly groundless.

Henry Shein, 139 S. Ct. at 529.

"Where there is a clear and unmistakable delegation of arbitrability issues, the court's proper inquiry 'before referring a dispute to an arbitrator' is limited to 'determin[ing] whether a valid arbitration agreement exists . . . . [I]f a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue.'" Bosse v. New York Life Ins. Co., 992 F.3d 20, 28 (1st Cir. 2021) (quoting Henry Schein, 139 S. Ct. at 530).

Although AGI argues that Noble's termination of the AGI License Agreement means that this dispute, involving conduct following that termination, is not covered by the Arbitration Provision, AGI does not specifically challenge the validity of the Arbitration Provision itself. Specifically, there is no suggestion that the Arbitration Provision was invalid when formed. Further, to the extent that the termination of the AGI License Agreement could have also terminated the Arbitration Provision, an issue AGI describes as "immaterial,"[5] the Court finds that there is no indication that it did.[6]

---

[5] See [ECF No. 23 at 16 ("Noble's assertions that the Arbitration Agreement survives the termination of the AGI License is immaterial as the Arbitration Agreement is limited to claims connected to the AGI License, of which AGI's current infringement claims are not.")].

[6] As the First Circuit explained in Biller v. S-H OpCo Greenwich Bay Manor, LLC, 961 F.3d 502, 512 (1st Cir. 2020), "unless the parties provided otherwise, an arbitration provision 'is severable from the remainder of the contract.'" Id. (quoting Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445 (2006)). Further, it is "presume[d] that the arbitration clause (independent as it is) survives the underlying contract," and "[e]ven if the rest of the parties' contractual rights and obligations ended . . . that [does] not mean their duties to arbitrate their contract-related disputes ended, too." Id. at 512–13. "In theory, this presumption reflects commercial custom: When two parties commit to arbitrate disputes arising under a contract, they ordinarily mean to bind each other to arbitrate such disputes even if the grievant doesn't complain until after the contract expires." Id. at 513 (citing Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B., 501 U.S. 190, 205, 208 & n.3 (1991)). Thus, "to successfully

The Court therefore moves on to address whether the Arbitration Provision evinces clear and unmistakable delegation of arbitrability issues.  The Arbitration Provision states that

> any dispute, claim or controversy arising under, out of, in connection with or relating in any way to this Agreement . . . that cannot be resolved by the parties through non-binding mediation . . . will then be resolved solely and exclusively by binding arbitration **conducted in accordance with the then effective Commercial Arbitration Rules of the American Arbitration Association**.

[ECF No. 22-4 ¶ 6.3 (emphasis added)].

Rule 7(a) of the AAA's Commercial Arbitration Rules and Mediation Procedures ("AAA Commercial Rules"), effective at the time this litigation was filed, states that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  Am. Arb. Ass'n, Com. Rules and Mediation Procs., Rule 7(a) (2013).[7]

Although the Supreme Court has not taken a position on whether the incorporation of the AAA Commercial Rules is clear and unmistakable evidence of intent to delegate arbitrability,[8]

---

argue that an arbitration agreement terminated and no longer governs any claim," a party must "mount an 'independent' challenge to the arbitration agreement itself."  Id. at 514 (citing Large v. Conseco Fin. Servicing Corp., 292 F.3d 49 (1st Cir. 2002)).

AGI has raised no such "independent challenge" here and the plain language of the AGI License Agreement supports that the parties did not intend to deviate from these presumptions.  The "severability" provision of the Purchase Agreement, also incorporated into the AGI License Agreement, expressly provides that "[t]he invalidity or unenforceability of any provision hereof shall in no way affect the validity or enforceability of any other provision."  [ECF No. 22-3 ¶ 11.1; ECF No. 22-4 ¶ 6.10].  Additionally, there is nothing in the broad Arbitration Provision indicating that the parties intended it to be time limited.

[7] Similarly, Rule 7(a) of the current AAA's Commercial Rules, effective September 2022, states that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim, without any need to refer such matters first to a court." Am. Arb. Ass'n, Com. Rules and Mediation Procs., Rule 7(a) (2022).

[8] On remand in Henry Schein, 935 F.3d 274 (5th Cir. 2019), the Fifth Circuit concluded that the parties' contract, which incorporated the AAA Commercial Rules, did not delegate arbitrability

federal courts of appeals, including the First Circuit, have consistently (and recently) concluded that it does.  See Awuah v. Coverall N. Am., Inc., 554 F.3d 7, 11 (1st Cir. 2009) ("Rule 7(a) [of the AAA Commercial Rules] . . . is about as clear and unmistakable as language can get, meeting the standard we have followed." (internal quotation marks omitted)); see also Mendoza v. Fred Haas Motors, Ltd., 825 F. App'x 200, 202 (5th Cir. 2020) ("Incorporating the [AAA Commercial] rules into the agreement 'presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability.'" (quoting Petrofac, Inc. v. DynMcDermott Petrol. Operations Co., 687 F.3d 671, 675 (5th Cir. 2012))); Blanton v. Domino's Pizza Franchising LLC, 962 F.3d 842, 846 (6th Cir. 2020); Richardson v. Coverall N. Am., Inc., 811 F. App'x 100, 103 (3d Cir. 2020); Dish Network L.L.C. v. Ray, 900 F.3d 1240, 1246 (10th Cir. 2018); Brennan v. Opus Bank, 796 F.3d 1125, 1130 (9th Cir. 2015); Fallo v. High-Tech Inst., 559 F.3d 874, 878 (8th Cir. 2009); Contec Corp. v. Remote Sol., Co., 398 F.3d 205, 208 (2d Cir. 2005); Terminix Int'l Co., LP v. Palmer Ranch Ltd. P'ship, 432 F.3d 1327, 1332 (11th Cir. 2005).  Thus, because the Arbitration Provision incorporates the AAA's Commercial Rules, the Court finds that the authority to determine arbitrability has been delegated to an arbitrator who must determine

---

of the claims at issue because there was a carve-out in the arbitration clause for actions seeking injunctive relief.  Id. at 281–82.  The Fifth Circuit noted, however, that, in the absence of such a carve-out, incorporation of the AAA's rules is evidence of intent to arbitrate arbitrability.  Id. at 279–81.  Both parties sought further Supreme Court review, Schein regarding the Fifth Circuit's holding with respect to the contractual carve-out provision, see Cert. Pet., Henry Schein, Inc. v. Archer and White Sales, Inc., No. 19-963, 2020 WL 529195, at *I (Jan. 31, 2020), and Archer and White regarding whether incorporation of the AAA's rules is clear and unmistakable evidence of intent to arbitrate arbitrability, see Conditional Cross-Pet., Archer and White Sales, Inc. v. Henry Schein, Inc., No. 19-1080, 2020 WL 1391910, at *I (Mar. 2, 2020).  The Supreme Court granted Schein's petition, see Henry Schein, Inc. v. Archer and White Sales, Inc., 141 S. Ct. 107 (2020), but denied Archer and White's, see Archer and White Sales, Inc. v. Henry Schein, Inc., 141 S. Ct. 113 (2020), suggesting that it was not troubled by the state of the law regarding the incorporation of the AAA rules.  After oral argument regarding the issue raised in Schein's appeal, the Supreme Court dismissed the writ of certiorari as improvidently granted.  Henry Schein, Inc. v. Archer and White Sales, Inc., 141 S. Ct. 656 (2021).

whether each of AGI's claims in this litigation constitutes a "dispute, claim or controversy arising under, out of, in connection with or relating in any way to" the AGI License Agreement. [ECF No. 22-4 ¶ 6.3].

Accordingly, Noble's motion to compel arbitration is <u>GRANTED</u> insofar as AGI must now submit its claims to an arbitrator for a decision as to arbitrability.

Noble further requests that if the Court grants its motion to compel arbitration, the Court also dismiss this case.  [ECF No. 19].

> Section 3 of the FAA requires that where issues brought before a court are arbitrable, the court shall "stay the trial of the action until such arbitration has been had in accordance with the terms of the [arbitration] agreement."  However, a court may dismiss, rather than stay, a case when all of the issues before the court are arbitrable.

<u>Bercovitch v. Baldwin Sch., Inc.</u>, 133 F.3d 141, 156 n.21 (1st Cir. 1998) (citations omitted); <u>see also</u> <u>Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.</u>, 638 F.3d 367, 372 (1st Cir. 2011) ("Where one side is entitled to arbitration of a claim brought in court, in this circuit a district court can, in its discretion, choose to dismiss the law suit, if all claims asserted in the case are found arbitrable." (internal quotation omitted)).  Because the Court has found only that the threshold issue of arbitrability is arbitrable, the Court declines to exercise its discretion to dismiss the case, and Noble's motion to dismiss is therefore <u>DENIED</u>.  Instead, this action is <u>STAYED</u>, pending a decision by an arbitrator as to the arbitrability of AGI's claims.

## IV.   CONCLUSION

For the above reasons, Noble's motion to compel arbitration, [ECF No. 19], is <u>GRANTED</u> in part and <u>DENIED</u> in part.  Should AGI wish to proceed, it must submit its claims to an arbitrator for a decision as to arbitrability.  The action is <u>STAYED</u> pending resolution of those proceedings.

**SO ORDERED.**

July 27, 2023                                    /s/ Allison D. Burroughs
                                                 ALLISON D. BURROUGHS
                                                 U.S. DISTRICT JUDGE